(C. D. 296)

H. L. GREENE & Co., INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided March 8, 1940)

Plaintiff not represented by counsel.

*Webster J. Oliver*, Assistant Attorney General (*Daniel G. McGrath*, special attorney), for the defendant.

Before CLINE, EVANS, and KEEFE, Judges

CLINE, Judge: This is a suit against the United States in which the plaintiff seeks to recover additional duty assessed at the rate of 10 per centum ad valorem under the provisions of section 304 (b) of the Tariff Act of 1930 on the ground that the merchandise in the shipment was not legally marked at the time of importation.

When the case was called for trial, Mr. Murray Berger, president of the importing company, appeared as a witness. He testified that the merchandise contained in four cases consisted of linen fabrics made in Ireland; that the fabrics were wound on flat boards, 5 inches by 18 inches in size, and that each bolt was wrapped in ordinary wrapping paper and bound with a string; that the boards on which the fabrics were wound each contained a small hole; that cardboard tags were attached to the boards by means of cords which passed through the holes in the boards and through holes in the tags; that the cords were of such length that they passed out through the paper wrappers and the tags attached thereto were tucked under the string by which the paper wrappers were fastened or bound; and that the tags were noticeable and conspicuous on the outside of the paper-covered bolts. One of the tags was admitted in evidence and marked Exhibit No. 1. It contains at the top the words "Moygashel Linen Fabrics." In the center of the tag is the piece number, the pattern number, the width and the yardage of the bolt and the following words are at the bottom.

Warranted
Pure Linen
Made in Ireland.

The plaintiff claims in its protest that the paper wrappers are not the immediate containers of the textiles but are used as a "protection against any external cause," such as oil or water; that the wooden cases were the immediate containers; and that, as the cases were legally marked under the decision in *Kraft Phenix Cheese Corp.* v. *United States*, 22 C. C. P. A. 111, T. D. 47103, the additional

duty should not have been assessed. It is further claimed in the protest that the tags which were attached to the inner boards on which the fabrics were wound contained the proper marking legend and that they are sufficient to indicate the country of origin of the goods.

The protest contains also a copy of certain returns of the appraiser showing that cases 1, 2, 3, and 4 were legally marked, and that tags containing the words "Made in Ireland" were attached to the boards on which the fabrics were wound. We find substantially the same notations in red ink on the invoice, evidently made by the appraiser. It is shown, however, that bale No. 5 contained dresses and neither the articles nor the immediate containers thereof were marked, although the burlap bale was properly marked. The witness did not discuss the merchandise in bale number 5 in his testimony.

In *Kraft Phenix Cheese Corp.* v. *United States, supra,* the court held that if either the imported article or the immediate container thereof was legally marked when imported, the additional duty provided for under section 304 (b) should not be assessed. It is clear from the evidence in this case that no marking appeared on the fabrics themselves. Therefore the only question for decision is whether the immediate containers thereof were marked.

The court has held in numerous decisions that where a bolt of cloth or other merchandise is wrapped in paper the wrapping paper is the immediate container of the goods. *International Forwarding Co., Inc.* v. *United States,* C. D. 266, and cases referred to therein. On the authority of the decisions cited, we hold that the packing cases in which the merchandise herein involved was imported were not the immediate containers of the goods, as claimed by the plaintiff.

There remains for consideration the question of whether the marking on the cardboard tags attached by means of cords to the boards on which the fabrics were wound and tucked under the string on the outside of the paper packages was sufficient to indicate the country of origin of the goods. Those tags contained the words "Made in Ireland" and they would be visible when the packages were taken out of the cases and also after the bolts of cloth were unwrapped, for they still would remain attached to the boards after the wrapping paper was removed. In addition to the marking legend, the tags contained the piece number and the pattern number of the fabrics, the width, and the yardage in the bolt. A merchant would require that such valuable information remain attached to the goods so that it is doubtful if the tags would be allowed to become detached. Witness Berger testified that these tags remain on the bolts after the fabrics are placed on the shelves in the importer's place of business.

In the case of *J. L. Hudson Co.* v. *United States,* Abstract 32464, yarns were imported attached to cards and packed in boxes. Neither

the yarns nor the cards contained any marking, but the boxes were legally marked. The court held that the cards were the immediate containers of the yarns, and, as neither the yarns nor the cards were legally marked, the additional duty was properly assessed by the collector. Another case of similar import is *United Bead Corp.* v. *United States*, Abstract 33005. In that case the importation consisted of metal place card holders mounted temporarily on cards. There was no marking as to country of origin on either the articles or the cards, but the words "Made in China" were stamped on the outside carton in which the articles attached to the cards were packed. The court held that the cards were the immediate containers of the place card holders, and, as neither the articles nor the immediate containers thereof were marked, the merchandise was subject to the additional duty assessed under section 304 (b). Under the principle announced in the two decisions last cited, the wooden boards upon which the fabrics in this case were wound would be the immediate containers of the fabrics.

In the case of *Mitsui & Co.* v. *United States*, Abstract 37822, the importation consisted of raw silk packed in bundles or so-called "books." The silk was securely tied together by means of heavy cotton cords under which appeared a label containing the words "Made in China." The label was not fastened to the silk by any means other than the cords which bound the silk together and also held the label in place. The bundles were covered with cheesecloth which was fastened by tying together the ends of the pieces of cloth but this covering contained no marking to indicate the country of origin of the silk. The court held that the silk itself was legally marked by means of the labels under the binding strings. The tags in the case herein involved were not in actual contact with the fabrics but they were in contact with the paper coverings of the fabrics and they were held in contact with the paper coverings by the strings which held the paper-covered bundles together. Thus they were attached to the paper coverings in a manner similar to the method of attaching the labels on the raw silk in the *Mitsui & Co.* case, *supra*.

In *Asiam, Inc.* v. *United States*, 25 C. C. P. A. 68, T. D. 49065, the court held that, where the marking as to country of origin appeared on paper labels attached to the heads of barrels containing cherries, the marking was "sufficient reasonably to comply with the statutory condition," and that the immediate containers of the cherries were legally marked. In the case of *United States* v. *Monteverde & Parodi, Inc., et al.*, 26 C. C. P. A. 112, C. A. D. 2, the court passed upon a marking case in which the marks which indicated the country of origin of mushrooms appeared on tags attached to the string which closed the mouth of the bags containing the goods. When the bags were opened, the tags necessarily would be removed, leaving no indication to a prospective purchaser of the country of origin of the goods.

The court did not condemn the practice of marking the bags by means of tags but held that, as the labels were not attached to the bags themselves, the bags were not marked. The marking by means of tags attached to the boards and paper coverings in the merchandise herein involved does not contain the objectionable features pointed out in the *Monteverde & Parodi, Inc.* case, *supra*. Here the tags were attached to the boards which would not be removed in displaying the goods and they also were held in contact with the paper coverings of the bolts by the string which bound the coverings to the fabrics.

We are of opinion that the marking on the cardboard tags in this case, attached as above described to the paper coverings and to the wooden boards upon which the fabrics were wound, was sufficient to indicate to a prospective purchaser, or the general public, that Ireland was the country of origin of the linens. Under the authority of the decisions cited, we hold that the immediate containers of the fabrics, either the wooden boards or the paper wrappers (there being authority for holding either to be the immediate containers) were legally marked, and, following the decision in *Kraft Phenix Cheese Corp.* v. *United States, supra,* we hold that the fabrics in cases 1, 2, 3, and 4 are not subject to the additional duty of 10 per centum ad valorem under section 304 (b) of the Tariff Act of 1930, as assessed by the collector. To that extent, the protest is sustained and judgment will be entered accordingly.

The plaintiff introduced no evidence relating to the merchandise in bale No. 5 regarding which the report of the appraiser on the invoice indicates that neither the articles nor the immediate containers thereof were marked so as to indicate the country of origin. The presumption of correctness attaching to the collector's decision in assessing the additional duty on the merchandise in that bale has not been overcome. Accordingly, as to the merchandise in bale No. 5, the protest is overruled and judgment will be entered accordingly.